UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


| SHELTON BROTHERS, INC., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 3:13-CV-30180-MAP |
| ALEPH WINES CORPORATION, | ) | |
| Defendant | ) | |
| _____ | ) | |


REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO
DISMISS THE COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT

July 21, 2014

Hennessy, M.J.

By order of reference (Docket #16), and pursuant to 28 U.S.C. § 636(b)(1)(B), this matter was referred to me for a Report and Recommendation on the Defendant's Motion to Dismiss the Complaint and Request for Declaratory Judgment (Docket #11).[1] Plaintiff filed an opposition to Defendant's motion. (Docket #14). This matter is now ripe for adjudication. For the reasons that follow, I RECOMMEND that the Motion to Dismiss be DENIED.

### I. FACTS AND PROCEEDINGS

This action stems from a dispute regarding the parties' termination of their business relationship involving the distribution of beer. Plaintiff, Shelton Brothers, Inc. ("Shelton") is a Massachusetts corporation that imports, exports, wholesales, and distributes foreign and domestic beer and cider. (Docket #1, ¶7). Shelton distributes hundreds of different products to

---

[1] The Defendant moves to dismiss the Complaint and Request for Declaratory Judgment ("the Complaint") on three grounds: (1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (2) improper venue pursuant to Red. R. Civ. P. 12(b)(3); and (3) the doctrine of forum non conveniens. (Docket #11). In the alternative, Aleph requests a transfer of venue to the United States District Court for the District of South Carolina. (Id.)

other licensed importers and/or wholesale distributors throughout the United States. (Id., ¶8). These importers and/or wholesale distributors place orders with and purchase products from Shelton in Massachusetts, and then transport the goods into their respective states. (Id.). Shelton sells its products "f.o.b", with an address in Easthampton, Massachusetts, where it leases and maintains a warehouse.² (Id.).

Defendant Aleph Wines Corporation ("Aleph") is a South Carolina corporation licensed by the State of South Carolina as a wholesale distributor of wine, spirits, and beer. (Docket #1, ¶9). Aleph does not have an office in Massachusetts and does not transact business in Massachusetts.³ (Docket #12-1, ¶4). Between 2003 and 2012, Shelton sold beer to Aleph for distribution to retailers in South Carolina.⁴ (Id., ¶10). During the nine years of their dealings, the parties engaged in a series of offers and acceptances that were negotiated from and took place in Massachusetts. (Docket #15, ¶4). Aleph arranged for its agent to collect goods at Shelton's warehouse in Massachusetts. (Docket #1, ¶8). Aleph regularly called, e-mailed and wrote to Shelton in Massachusetts to place and pay for orders totaling $537,347 over the nine-year

---

² The complaint is silent regarding what "f.o.b." means. Pursuant to Mass. Gen. Laws ch. 106, § 2-319(1), the term "f.o.b." means "free on board" and connotes a seller's agreement to, at his own expense and risk, ship the goods to the address indicated. See, 14C Mass. Prac., Summary of Basic Law § 16.24 (4th ed.); Fairview Mach. & Tool Co., Inc. v. Oakbrook Intern., Inc., 56 F. Supp. 2d 134, 136 (D. Mass. 1999). For purposes of this decision, the Court accepts this definition of "f.o.b." and assumes that Shelton agreed to "deliver" its goods to its warehouse in Massachusetts where Aleph would be responsible for retrieving the beer it had ordered.

³ Moreover, Aleph has never owned or rented any property in Massachusetts. (Docket #12-1, ¶5). None of Aleph's employees live in Massachusetts. (Id., ¶6). Aleph does not advertise in Massachusetts. (Id., ¶7). All of Aleph's documents and records are located in South Carolina. (Id., ¶8).

⁴ South Carolina law provides that any out of state beer importer must appoint a South Carolina wholesaler to distribute their beer in South Carolina. (Id., ¶13 citing S.C. Code Ann. § 61-4-940(A)). Shelton has never been licensed by South Carolina's Alcohol Beverage License Licensing Section. (Id., ¶7).

relationship. (Docket #15, ¶¶6-11). Shelton does not have an office or employees in South Carolina, nor does it rent or own property in South Carolina. (Id. ¶¶10-11).

On April 30, 2013, Daniel Shelton, President of Shelton, sent an e-mail to Jean Pierre Chambas, Aleph's Chief Executive Officer. (Docket #1-2). In this e-mail, Shelton gave its notice of intent to terminate its business relationship with Aleph under S. C. Code Ann. § 61-4-1100.[5] (Id.). On June 5, 2013, Aleph sent Shelton a letter asserting that Shelton's termination letter amounted to Shelton's breach of its exclusive franchise distribution agreements with Aleph, a violation of various South Carolina laws, and a tortious interference with contractual relations by refusing to ship goods to Aleph.[6] (Docket #1-3, p.1). Aleph demanded that Shelton immediately perform and allow Aleph to order goods from Shelton. (Docket #1-3, p.3). Aleph warned Shelton that unless it contacted Aleph by June 15, 2013, that Aleph would seek an injunction prohibiting Shelton from shipping products into South Carolina directly or through other wholesalers. (Id.).

On June 21, 2013, Shelton sent confirmation to Aleph that it had terminated the parties' business relationship in good faith. (Document #1-4). Aleph did not respond to this e-mail or

---

[5] Under S. C. Code Ann. § 61-4-1100(2)(b), the producer must give the distributor sixty days' notice of a decision to terminate and must specify the reasons for termination. The notice must also state that the agreement is terminated in good faith and for a material violation of one or more provisions which are relevant to the effective operation of the agreement. In this e-mail, Shelton disputed that the parties had any settled agreement, and in any event, it advised Aleph that it would no longer sell beer to Aleph due to Shelton's dissatisfaction with Aleph's sales and distribution efforts. (Docket #1-2).

[6] Aleph refers to the parties as having entered a "franchise distribution agreement;" but, Aleph has not submitted any such agreement and Shelton disputes this fact. (Docket #12-1, ¶9). Because the Court is addressing a motion to dismiss, it accepts the facts about the business relationship as alleged by Shelton as true. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). Shelton alleges "the parties have never had and [sic] written or oral agreement governing their business relationship." (Docket #15, ¶5) It characterizes their "relationship" as one of a series of offers to sell by Shelton and acceptances to purchase by Aleph. (Id., ¶4).

seek an injunction against Shelton. (Docket #1, ¶21). Having not heard from Aleph since its June 5, 2013 letter, Shelton sent a follow-up to its previous correspondence and confirmed that its termination of the business relationship under South Carolina law took effect on June 29, 2013 (i.e., 60 days from its April 30, 2013 e-mail terminating the parties' relationship). (Docket #1-5). Shelton was looking for assurance from Aleph that it would not contest the validity of Shelton's termination. (Id.). On August 30, 2013, Aleph replied that the franchise agreement between the parties had not been effectively terminated because Shelton's termination was in bad faith. (Docket #1-6). Aleph reiterated that it "continue[d] to want to do business" with Shelton and that it wanted to resolve the disagreement. (Id.). Aleph cautioned that it would sue Shelton if Shelton engaged in business with any other South Carolina importer. (Id.). Due to this threat of litigation by Aleph, Shelton refrained from forming a business relationship with any other beer distributor in South Carolina. (Docket #1, ¶24).

On October 29, 2013, Shelton filed a complaint against Aleph in this Court, invoking diversity jurisdiction and seeking a declaratory judgment (1) that its termination of its relationship with Aleph was effective in 2013; and (2) that Aleph has no viable claims against Shelton stemming from their relationship. (Docket #1). Shelton attached and incorporated by reference six exhibits to its Complaint. (Dockets #1-1 through #1-6). On December 30, 2013, Aleph filed a Motion to Dismiss Shelton's complaint (Docket #11) with a supporting memorandum and affidavit from its CEO, Jean Pierre Chambas. (Dockets #12, 12-1). On January 13, 2014, Shelton filed an opposition (Docket #14) with a supporting Affidavit of Daniel Shelton. (Docket #15).

In its motion to dismiss, Aleph argues that the complaint should be dismissed for: (1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); (2) improper venue pursuant to Fed.

R. Civ. P. 12(b)(3); and (3) the doctrine of forum non conveniens.  In the alternative, Aleph requests a transfer of venue to the United States District Court for the District of South Carolina. Aleph argues it is a South Carolina corporation without any significant contacts with Massachusetts; all of its documents and witnesses are located in South Carolina; the disputed agreement was to be performed in South Carolina; and that a South Carolina statute controls some issues between the parties.  In opposition, Shelton principally asserts that this Court has personal jurisdiction over Aleph because, over the course of nine years, Aleph regularly reached out and transacted business in Massachusetts via phone calls and messages, by purchasing beer from and making payments to Massachusetts, and regularly arranging for its agent to collect goods at Shelton's warehouse in Massachusetts.  Shelton also contends that Massachusetts is a proper venue for this dispute, and that a transfer is unwarranted as all of Shelton's employees, witnesses and documents are here in Massachusetts.

## II. ANALYSIS

### A. The Jurisdictional Issue

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of proving that the court has personal jurisdiction over the defendant.  See Daynard v. Ness, 290 F.3d 42, 50 (1st Cir. 2002).  "When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing … the prima facie standard governs its determination."  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under the prima facie standard, the court looks to "the pleadings and both parties' supplementary filings, including affidavits, taking facts affirmatively alleged by the plaintiff as true and viewing disputed facts in the light most favorable to plaintiff."  Sawtelle v. Farell, 70 F.3d 1381, 1385 (1st Cir. 1995).  Accepting a plaintiff's properly supported facts as

5

true, "[w]e then add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law, 142 F.3d at 34.

With this procedural framework in mind, a "district court may exercise authority over a defendant by virtue of either general or specific jurisdiction." Daynard, 290 F.3d at 51. Specific jurisdiction is challenged here. Specific jurisdiction exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-89 (1st Cir. 1992) ("Pleasant St. I"). Aleph argues this Court lacks specific jurisdiction over Aleph because it is a South Carolina corporation. Shelton contends that regardless of Aleph's state of incorporation, Aleph should be subject to jurisdiction in Massachusetts because it has sufficient contacts with Massachusetts based on the parties' business dealings.

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court … must … find sufficient contacts between the defendant and the forum to satisfy both that state's long-arm statute and the Fourteenth Amendment's Due Process Clause." Sawtelle v. Farell, 70 F.3d 1381, 1387 (1st Cir. 1995). "Federal courts look to state law to determine whether jurisdictional requirements have been met." Gray v. O'Brien, 777 F.2d 864, 866 (1st Cir. 1985). In Massachusetts, the Supreme Judicial Court has interpreted the state long-arm statute as coextensive with the constitutional limits set forth by the Due Process Clause of the Fourteenth Amendment. Daynard, 290 F.3d at 52 (quoting "Automatic" Sprinkler Corp. of Am. v. Seneca Foods Corp., 361 Mass. 441, 443 (1972)).

    1. <u>Constitutional Analysis Under Due Process Clause of Fourteenth Amendment</u>

To comport with constitutional limits regarding personal jurisdiction over Aleph, Shelton must have alleged that Aleph has sufficient contacts with Massachusetts such that "maintenance

6

of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). "A party wishing to validate a court's jurisdiction must show that minimum contacts exist between the defendant and the forum state." Ticketmaster v. Alioto, 26 F.3d 201, 206 (1st Cir. 1994) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). The minimum contacts analysis is a tripartite test comprising: (1) relatedness; (2) purposeful availment; and (3) reasonableness. See Pleasant St. I, 960 F.2d at 1089. According to this test, the plaintiff's claim must directly arise out of, or relate to, the defendant's forum-state activities. Id. Second, the defendant's in-state contacts must show that the defendant purposefully availed itself of the privilege of conducting activities in the forum state, thus invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Id. Third, the exercise of jurisdiction must be reasonable. Id.

    a. Relatedness

"The [relatedness] requirement focuses on the nexus between the defendant's contacts and the plaintiff's cause of action." Ticketmaster, 26 F.3d at 207. "[T]he relatedness requirement is not met merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state." Id. (quoting Sawtelle, 70 F.3d at 1389). Here, that requirement is met.

Shelton has alleged two claims based on the parties' nine-year business relationship whereby Aleph negotiated with Shelton to purchase beer and then sent its agent to Shelton's distribution center in Massachusetts. This relationship involved extensive phone and e-mail communications directed to Massachusetts, and Aleph's agent collecting its goods from

Shelton's Massachusetts warehouse. These contacts relate to this cause of action because they were material to the parties' relationship. Therefore, Aleph's contacts with Massachusetts satisfy the relatedness inquiry. See Daynard, 290 F.3d at 60.

      b. Purposeful Availment

Aleph argues that its contacts with Massachusetts are insufficient to establish that it purposefully availed itself of the privilege of conducting business in Massachusetts, and that the parties' agreement only concerned the wholesale distribution of beer in South Carolina, which state's economy and society were solely impacted. Id. Shelton contends that Aleph established voluntary and deliberate contacts with Massachusetts, and that Aleph derived a substantial economic benefit from doing business with Shelton in Massachusetts.

"The purposeful availment component is designed to assure that personal jurisdiction is not premised solely upon a defendant's random, isolated, or fortuitous contacts with the forum." Comer v. Comer, 295 F. Supp. 2d 201, 207 (D. Mass. 2003) (quoting Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 774 (1984)) (internal quotation marks omitted). The two cornerstones of purposeful availment are foreseeability and voluntariness. Ticketmaster, 26 F.3d at 207. "The foreseeability that is critical to due process analysis … is that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably be anticipated being haled to court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). "Even if a defendant's contacts with the forum are deemed voluntary, the purposeful availment prong of the jurisdictional test investigates whether the defendant benefitted from those contacts in a way that made jurisdiction foreseeable." Phillips Ex. Acad. v. Howard Phillips Fund, 196 F.3d 284, 292 (1st Cir. 1999). "The enforcement of personal jurisdiction over a non-resident defendant is foreseeable when that defendant established a continuing obligation

8

between itself and the forum state." Sawtelle, 70 F.3d at 1393. Here, Aleph's contacts with Massachusetts meet both requirements of foreseeability and voluntariness.

Aleph chose to conduct business with Shelton, a Massachusetts corporation with a warehouse and employees in Massachusetts. Aleph voluntarily negotiated the purchases of alcohol with Shelton knowing it would take delivery of such purchases "f.o.b.", i.e., at Shelton's warehouse in Massachusetts. Indeed, Aleph was required to arrange for its agent to travel to Shelton's warehouse to take delivery. In doing so, Aleph's agent used Massachusetts roads and related services, such as the protection provided by Massachusetts policing agencies. The sum of the cost of goods it received in Massachusetts exceeded a half million dollars. This business was transacted over a nine-year period, and carried on through communications with Shelton in Massachusetts. Such contacts support a finding that an exercise of jurisdiction over Aleph was foreseeable.

For the very same reasons, Aleph's conduct and connection with Massachusetts is voluntary. Far from being an instance where a product found its way into Massachusetts, see World-Wide Volkswagen, 444 U.S. at 296 (citing cases), Aleph voluntarily chose to do business with a Massachusetts corporation. For nine years, it negotiated contracts with the corporation, knowing that performance required that its agent travel into Massachusetts, on Massachusetts roads, to the corporation's Massachusetts warehouse to take delivery of goods. When, as here, "a corporation 'purposely avails itself of the privilege of conducting activities within the forum state' it has clear notice that it is subject to suit there." World-Wide Volkwagen, 444 U.S. at 297 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958). Indeed, Aleph could have voluntarily alleviated the risk of defending suit in Massachusetts by severing its ties with Shelton, or taking other steps to manage its exposure. This it chose not to do, which allows the Court to infer that

Aleph benefitted from its contacts with a Massachusetts business. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473 (1985) ("[p]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities") (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, (1950)) (internal quotations omitted). Aleph's voluntary contacts with Massachusetts are such that Aleph benefitted from those contacts in a way that should have made jurisdiction foreseeable to Aleph. See Phillips Ex. Acad., 196 F.3d at 292. Shelton has therefore carried its burden of alleging sufficient facts to show Aleph purposefully availed itself of the privilege of conducting business in Massachusetts.

      c. Reasonableness

The last prong in the constitutional minimum contacts analysis is the test of reasonableness. Aleph argues that it would be unreasonable to have to appear before a Massachusetts court because it is a South Carolina corporation whose witnesses and documents are in South Carolina, and that Massachusetts would be an inconvenient forum for collecting and conducting discovery. Moreover, Aleph argues that Massachusetts does not have an interest in the resolution of a dispute concerning South Carolina law. On the other hand, Shelton contends Aleph has not met its burden to show that litigating here would be onerous in a constitutionally significant way. Shelton asserts that Massachusetts has an interest in adjudicating disputes affecting Massachusetts businesses, including providing a convenient forum for its residents to remedy injuries brought upon them by out-of-state defendants. Shelton also argues that the plaintiff's choice of forum must be given deference with respect to its convenience. Lastly, Shelton argues that effective administration of justice also favors Massachusetts, where this action is already pending.

In order to illuminate the reasonableness inquiry, the First Circuit has identified the the following five gestalt factors: (1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. See Adelson v. Hananel (Adelson II), 652 F.3d 75, 83 (1st Cir. 2011); Ticketmaster, 26 F.3d at 209. "The gestalt factors are not ends in themselves, but they are, collectively, a means of assisting courts in achieving substantial justice." Ticketmaster, 26 F.3d at 209.

Addressing the factors seriatim, the first inquiry involves Aleph's burden of appearing before Massachusetts courts. "[T]he burden of the defendant's appearance is primarily important as a gestalt factor to avoid harassing litigation." Hasbro Inc. v. Clue Computing Inc., 994 F. Supp. 34, 46 (D. Mass. 1997) (citing Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 718 (1st Cir. 1996)). "[T]his factor is only meaningful where a defendant can demonstrate some kind of special or unusual burden." Id. at 60. The facts here do not suggest that Aleph's travel between South Carolina and Massachusetts would be so onerous to tip the balance in its favor for this factor. See, e.g., Id. at 64 (not onerous for New York defendants to travel to Puerto Rico); Fairview Mach. & Tool Co., Inc. v. Oakbrook Intern., Inc., 56 F. Supp. 2d 134, 140 (D. Mass. 1999) (not onerous for Illinois defendants to travel to Massachusetts); Champion Exposition Servs., Inc. v. Hi-Tech Elec., LLC, 273 F. Supp. 2d 172, 174 (D. Mass. 2003) (not onerous for Nevada defendants to travel to Massachusetts). Aleph posits a self-serving statement that it would be "overly burdensome" to litigate this case in Massachusetts, but Aleph fails to cite any specific or unusual factors other than inconvenience in litigating in Massachusetts. "Staging a defense in a foreign jurisdiction is almost always inconvenient and costly." Pritzker v. Yari, 42

11

F.3d 53, 64 (1st Cir. 1994). Indeed, the argument is at odds with the fact that Aleph paid an agent to travel to and from Massachusetts to transport the alcohol Aleph purchased. Insofar as Aleph merely claims an "onerous" burden without any facts showing a special or unusual burden in appearing in Massachusetts, the first factor favors Shelton.

The second factor involves an inquiry into the forum state's interest in adjudicating this dispute. See Adelson v. Hananel (Adelson I), 510 F.3d 43, 51-52 (1st Cir. 1994). This Court agrees with Shelton that Massachusetts has an interest in protecting the legal and economic interests of its citizens and corporations. See Diamond Group. Inc. v. Selective Distribution Intern., Inc., 84 Mass. App. Ct 545, 554 ("the Commonwealth has a manifest interest in providing a convenient forum to residents asserting good faith and objectively reasonable claims for relief"); see also eSapience, Ltd. v. C.V. Starr & Co., Inc., cv. 07-10455-RWZ, 2007 WL 3232551, at * 3 (D. Mass. Oct. 24, 2007). "The purpose of this inquiry is not to compare the forum's interest to that of some other jurisdiction, but to determine the extent to which the forum has an interest." Sawtelle, 70 F.3d at 1395 (quoting Foster–Miller v. Babcock & Wilcox Canada, 46 F.3d 138, 151(1st Cir. 1995)). Therefore, the second factor also favors Shelton.

The third factor considers whether a plaintiff's choice of forum should be given deference. Ticketmaster, 26 F.3d at 211. Shelton's interest in obtaining convenient and effective relief in its home state of Massachusetts is considerable. Sawtelle, 70 F.3d at 1395. Shelton is located here, and all of its documents and records are in Massachusetts. Shelton does not have offices in South Carolina, does not rent or own property in South Carolina, and does not employ people in South Carolina. Shelton's interest in obtaining effective relief in Massachusetts is bolstered by the fact that it chose to file its complaint here. See Jet Wine & Spirits, Inc. v. Bacardi & Co., Ltd., 298 F.3d 1, 12 (1st Cir. 2002). Moreover, Shelton is not a national

12

company with offices in many states; Shelton is a Massachusetts corporation only. Thus, the third factor favors Shelton.

With respect to the fourth factor, insofar as there is already an action pending in Massachusetts, the effective administration of justice dictates that the action ought to be litigated in Massachusetts instead of being dismissed. See Hasbro, 994 F. Supp. at 46 ("[i]f this case is dismissed, it is unlikely that the parties will be able to resolve the dispute without judicial intervention in some forum. The most efficient path for the judicial system, then, is to move forward with the lawsuit in the present forum."); see also Int'l Bus. Machines Corp. v. Merlin Technical Solutions, Inc., cv. 06-40174-FDS, 2007 WL 335258, at *8 (D. Mass. Feb. 1, 2007) ("the efficient administration of justice favors jurisdiction in Massachusetts, where this action is already proceeding against defendant."). Therefore, the fourth factor favors Shelton.

With respect to the fifth and final factor -- the promotion of social policies -- this factor favors neither party. Insofar as neither Shelton nor Aleph has advanced any viable policy arguments in favor of litigating in Massachusetts or South Carolina, the inquiry regarding this factor does not advance the position of either party.

Taken as a whole, four out of five gestalt factors favor Shelton, making it reasonable for Aleph to be subject to personal jurisdiction in Massachusetts. See Ticketmaster, 26 F.3d at 209; see also Donatelli v. Nat'l Hockey League, 893 F.2d 459, 464 (1st Cir. 1990). Accordingly, this Court concludes that facts show that specific jurisdiction exists over Aleph. The Court therefore recommends that the motion to dismiss based on a lack of personal jurisdiction be denied.

### B. Venue

Aleph also moves to dismiss this case based on a claim of improper venue pursuant to Fed. R. Civ. P. 12(b)(3). Aleph argues that South Carolina is the proper venue because the

triggering event that gave rise to the complaint occurred when Shelton sent its termination e-mail to Aleph in South Carolina. Aleph also asserts that it is not a Massachusetts corporation and none of its employees live in Massachusetts. In support of its argument that Massachusetts is a proper venue, Shelton argues that multiple events occurred in Massachusetts that gave rise to its prayer for declaratory judgment. Shelton also points to Aleph's letters and e-mails sent to and received by Shelton in Massachusetts, all of which support venue here.

Venue is proper "in a judicial district in which a substantial part of the events … giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "When an objection to venue has been raised, the burden is on the plaintiff to establish that venue is proper in the judicial district in which the action has been brought." Transamerica Corp. v. Trans-Am. Leasing Corp., 670 F. Supp. 1089, 1090 (D. Mass. 1987). "The prevailing test for venue under the claim arising provision of § 1391(b) is whether a substantial portion of the acts giving rise to the plaintiff's claim occurred in this district." Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F. Supp. 1106, 1112 (D. Mass. 1983) aff'd, 743 F.2d 947 (1st Cir. 1984) (internal quotations omitted); see also Abeloff v. Barth, 119 F.R.D. 315, 329 (D. Mass. 1988). The First Circuit has noted that the courts "are not required to determine the best venue, merely a proper venue." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009); see also ScanSoft, Inc. v. Smart, cv. 03-10456-GAO, 2003 WL 23142188, at *3 (D. Mass. Nov. 17, 2003).

Shelton has alleged that the parties were engaged in an ongoing, commercial relationship whereby Aleph purchased and transported beer from Shelton in Massachusetts for sale in South Carolina, spanning nine years of orders and involving a regular course of communication between the two states. Aleph cites one single event, the receipt of the termination e-mail in South Carolina, as giving rise to the underlying declaratory judgment action; however, this

14

somewhat myopic approach ignores circumstances surrounding the genesis of the letter, i.e., Shelton's reasons for terminating its relationship with Aleph. See Uffner v. La Reunion Francaise, S.A., 244 F.3d 38, 42 (1st Cir. 2001) (the First Circuit "look[s] … not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim when evaluating a motion to dismiss for improper venue.") and cases cited. Taking into account the entire sequence of events giving rise to Shelton's claim, as opposed to merely the termination e-mail, the facts suggest the parties' ongoing relationship of purchasing and distributing beer gave rise to the plaintiff's claim. Moreover, even though South Carolina could be a proper venue for this dispute, Massachusetts is where the events occurred as well. See Astro-Med, 591 F.3d at 12 (taking "holistic" view of the dispute, acknowledging a proper venue may lie in many districts and that a venue need not be the "best" venue for the dispute).

Furthermore, in evaluating whether venue is proper, "the court also must consider the availability of witnesses, the accessibility of other relevant evidence and the convenience of the defendant." Wool Masters, 573 F. Supp. at 1112. "Defendant's general allegations as to the location of books and records and the inconvenience to witnesses [are] not sufficient; more precise allegations are required." Systemation, Inc. v. Engel Indus., Inc., 992 F. Supp. 58, 63 (D. Mass. 1997) (citing cases that suggest a defendant must provide precise information, in affidavit form, that explains the difficulties with accessing its books, records, witnesses, etc.). Aleph argues in a general manner only that it would be inconvenienced because its witnesses and records are in South Carolina. This is unpersuasive. Id. Without more precise allegations, the Court finds that Shelton has satisfied its burden of proving that Massachusetts is a proper venue, and recommends that Aleph's motion to dismiss be denied. Transamerica Corp., 670 F. Supp. at 1090.

### C. Forum non conveniens

Aleph also seeks dismissal of the action by invoking the doctrine of forum non conveniens, chiefly arguing that South Carolina is an adequate alternative forum because Aleph is a South Carolina corporation and is subject to service of process there. Aleph further argues that all of Shelton's claims arise from South Carolina law and South Carolina courts and citizens have an interest in deciding issues arising from their state law. Shelton argues that dismissal is unwarranted because the parties' business relationship occurred primarily in Massachusetts. Shelton also asserts that it would be inconvenient for it to litigate in South Carolina as it does not have an office in South Carolina, does not own or rent property in South Carolina, and all of its records and documents are located in Massachusetts.

"The doctrine of forum non conveniens … permits a court to dismiss a case because the chosen forum … is so inconvenient that it would be unfair to conduct litigation in that place." Howe v. Goldcorp Invs., Ltd., 946 F.2d 944, 947 (1st Cir. 1991). Because the use of forum non conveniens involves dismissal, courts prefer to invoke their authority to transfer pursuant to 28 U.S.C. § 1404(a). See Workgroup Tech. Corp. v. MGM Grand Hotel, LLC, 246 F. Supp. 2d. 102, 115 (D. Mass. 2003). Nevertheless, if dismissal is pursued, "[t]he party moving for dismissal bears the heavy burden of establishing that an adequate alternative forum exists and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the second forum." Adelson I, 510 F.3d at 52 (citing Iragorri v. Int'l. Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)) (internal quotations omitted). "The plaintiff's forum choice should rarely be disturbed." Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991) (citing Gulf Oil, 330 U.S. at 508)) (internal quotations omitted).

Aleph agues that South Carolina would have greater expertise applying its own state law than a Massachusetts court would have, and that it has already interpreted and decided cases under the statute at issue here, i.e., S. C. Code Ann. § 61-4-1100. (Id.). While Aleph's argument has some appeal, the factual allegations recited above regarding Aleph's very significant contacts in Massachusetts establish that there is no unfairness in requiring it to litigate in Massachusetts a dispute regarding the parties' relationship. Thus, Aleph has not carried its heavy burden in establishing a basis for dismissal.[7]

**D. Transfer of Venue**

Lastly, Aleph alternatively argues that the Court should transfer this case to the District of South Carolina. Aleph fails to support its argument with case law or statutory authorities. Transfer of actions is governed by 28 U.S.C. § 1404(a) which provides, in pertinent part, "[a] district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented, for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).

"The burden of proof upon a motion to transfer venue rests with the party seeking to transfer the action to another jurisdiction." Coady v. Ashcraft & Gerel, 996 F. Supp. 95, 100-01 (D. Mass. 1998) rev'd on other grounds, 223 F.3d 1 (1st Cir. 2000). "There is a strong presumption in favor of the plaintiff's choice of forum." Id. The decision to transfer a case pursuant to 28 U.S.C. § 1404 is within the discretion of the district court. See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977). "Factors to be considered by the district

---

[7] Massachusetts courts are well-equipped to interpret and apply other states' laws. See Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 2 (1st Cir. 2004) (applying Maryland law); see also Levin v. Dalva Bros., Inc., 459 F.3d 68, 77 (1st Cir. 2006) (applying New York law); Crellin Technologies, Inc. v. Equipmentlease Corp., 18 F.3d 1, 10 (1st Cir. 1994) (applying Rhode Island law).

17

court in making its determination include the convenience of the parties and witnesses, the availability of documents, and the possibilities of consolidation." Art Tech. Grp., Inc. v. Puritan's Pride, Inc., 716 F. Supp. 2d 93, 105 (D. Mass. 2010) (quoting Cianbro Corp. v. Curran–Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987)). "[C]onvenience of the expected witnesses is probably the most important factor … the court must consider the number of potential witnesses located in both the transferor and the transferee district, the nature and quality of testimony, and whether witnesses can be compelled to testify." Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991) (citing Brant Point v. Poetzsh, 671 F. Supp. 2, 5 (D. Mass. 1987)) (internal citations omitted). "A party seeking transfer … must … specify the key witnesses to be called, accompanied by a general statement as to what their testimony will entail." Id. (citing Factors, Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978)); see Home Owners Funding Corp. of America v. Century Bank, 695 F. Supp. 1343, 1348 (D. Mass. 1988) ("in exercising its discretion, the Court must focus on the importance of each witness, not on the number of witnesses in the two states").

Aleph has not identified any key witnesses located in South Carolina or explained the significance of their potential testimony to the underlying dispute. See Lindsey, 136 F.R.D. at 18; see also Upromise, Inc. v. Angus, cv. 13-CV-12363, 2014 WL 212598, at *15 (D. Mass. Jan. 21, 2014). Aleph has also not shown that the cost of bringing its witnesses to Massachusetts will be unduly burdensome, or that any of its witnesses are unwilling or unable to appear in Massachusetts. See E.E.O.C. v. Texas Roadhouse, Inc., cv. 1:11-11732-DJC, 2012 WL 5894910, at *2 (D. Mass. Nov. 9, 2012). Thus, this Court is not convinced that the case should be transferred to South Carolina based on Aleph's self-serving claim that it would be inconvenient for its potential witnesses to appear in Massachusetts. See Workgroup, 246 F.

Supp. 2d at 116 (where diversity of citizenship exists between the two parties, one will always be inconvenienced); see also Lindsey, 136 F.R.D. at 18 (transfer would merely shift the inconvenience from one party to the other). With regard to Aleph's claim that its documents are located in South Carolina, technology is such that documents in South Carolina can be scanned there and accessed in Massachusetts. See Lindsey, 136 F.R.D. at 21 ("given the mobility of documents … this court does not find this factor significant in its determination of whether to transfer the case"); see also Norman v. Brown, 693 F. Supp. 1259, 1262 (D. Mass. 1998). Therefore, mere inconvenience to the defendant cannot be a basis for transfer of venue.

Aleph advances one persuasive argument: that a South Carolina court would be the preferred court to address Shelton's claims that arise from South Carolina law. See Subaru of New England Inc. v. Subaru of Augusta, Inc., 121 F.R.D. 1 (D. Mass. 1988); Brant Point Corp. v. Poetzsch, 671 F. Supp. 2, 4-5 (D. Mass. 1987). While a South Carolina District Court would have more familiarity with the statutes involved here, this consideration is one factor. Moreover, it would carry more weight if the issues or state law are unsettled or complex. 15 Wright, Miller & Cooper, Federal Practice and Procedure § 3854 (2007). But, Aleph does not advance this argument, so there is no reason to give this factor greater consideration over the others. Ultimately, Aleph has not convinced this Court that a transfer is warranted; thus, this Court recommends that Aleph's request to transfer this action to the district of South Carolina be denied.

# III.    CONCLUSION

For the reasons stated, I RECOMMEND that Defendant's Motion to Dismiss (Docket #11) be DENIED.[8]

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[8] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 154-55 (1985). A party may respond to another party's objections within 14 (14) days after being served with a copy thereof.